NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0299n.06

Nos. 22-5293/5299

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 28, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| LYNN RICHARD NORTON, | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: CLAY, GRIFFIN, and DAVIS, Circuit Judges.

GRIFFIN, Circuit Judge.

After a jury convicted defendant Lynn Norton of distributing methamphetamine, conspiring to distribute methamphetamine, and being a felon in possession of a firearm, the district court imposed a below-Guidelines sentence of 240-months' imprisonment. Norton now challenges many aspects of his convictions and sentence. We affirm.

I.

The relevant facts are straightforward. James Ward, Norton's co-conspirator, testified that he would regularly "front" Norton an ounce of methamphetamine for Norton to resell to others, and Norton would pay Ward back with the proceeds. This arrangement lasted "multiple months," with the two recurrently exchanging several ounces of methamphetamine. And sometimes, their roles flipped—on at least two instances after Ward's distributor ran out, Norton sourced methamphetamine elsewhere which he then sold to Ward.

Cheree Greene, another drug dealer, testified about a similar relationship with Norton. Essential to this appeal, she also told the jury that she bought a handgun and methamphetamine for a combined price of $475 from Norton while working as an informant. That transaction was recorded.

Based on these and other facts, a jury convicted Norton of conspiring to distribute at least 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A); distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court imposed a 240-month sentence. Norton has filed two appeals, one by his appointed counsel and one pro se.

## II.

The main appeal is Case No. 22-5299. Represented by counsel, Norton asserts several claims of error, none of which is meritorious.

## A.

Norton has preserved for appeal three issues concerning his trial and convictions: a sufficiency of the evidence claim, and challenges to two of the district court's evidentiary rulings. We address each in turn.

## 1.

Defendant challenges the sufficiency of the evidence supporting his conviction for conspiring to distribute at least 50 grams or more of methamphetamine. A defendant claiming insufficient evidence "faces a high bar" on appeal. *United States v. Persaud*, 866 F.3d 371, 379–80 (6th Cir. 2017). This is because we must uphold a jury's conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

307, 319 (1979). We can sustain a conviction based on circumstantial evidence alone, and the evidence need not disprove every hypothesis except that of guilt. *United States v. Lindo*, 18 F.3d 353, 357 (6th Cir. 1994).

As best we can discern, Norton contends the evidence introduced against him was insufficient because, in his view, the government made its case only through testimony of a co-defendant who pleaded guilty (Ward) and a cooperating witness (Greene). He questions their credibility and claims the government did not corroborate their accounts (which diverged from his own testimony). But a sufficiency claim does not allow us to "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (citation omitted). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (citation omitted). And through that lens, any rational juror could have concluded, based on the testimony of Ward and Greene alone, that Norton conspired with Ward to distribute methamphetamine.

2.

We turn next to defendant's two evidentiary challenges, both of which merit little analysis because we deem them abandoned.

Norton argues the district court erred when it barred under Federal Rule of Evidence 404(b) certain questioning concerning Greene's then-pending charges and prior convictions. But he does not say why the district court abused its discretion when it invoked Rule 404(b)'s bad-act exclusion. Failing to "advance[] any sort of argument for the reversal of the district court," *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007), or "cogent" claim that the district court got it wrong "constitutes abandonment," *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016).

Defendant next asserts that the district court impermissibly admitted the audio recording of his sale of the firearm and methamphetamine to Greene. But that contention exists solely in his statement of issues and not in the body of his brief. Noticeably absent, therefore, is any record citation, legal authority in support, or argumentation as to why the district court purportedly erred. Merely identifying that potential issue and then leaving it to us "to put flesh on [the] bones" of a "skeletal" argument renders it abandoned as well. *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) (citation omitted).

## B.

Norton asserts four claims of procedural error regarding his sentence. Again, none has merit.

## 1.

He first contends that the district court erroneously calculated his base-offense level by attributing to him a drug quantity of at least 150 grams, but less than 500 grams, of actual methamphetamine, which meant a base-offense level of thirty-two. *See* U.S.S.G. § 2D1.1.

When a defendant is convicted of a drug-distribution conspiracy, a district court can "hold a defendant accountable for drug quantities with which he was directly involved or that were reasonably foreseeable to him as part of a criminal conspiracy." *United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022) (internal quotation marks omitted). It may do so "based on physical evidence or testimony." *United States v. Tisdale*, 980 F.3d 1089, 1096 (6th Cir. 2020). We review a district court's drug-weight calculation for clear error. *Id.*

The district court found Norton was "conservative[ly]" responsible for 336 grams of methamphetamine based on the testimony and record evidence of sales between Ward, Greene, and Norton as follows: "(1) the first 2.5 ounces (70.87 grams) sold by Defendant to Mr. Ward;

(2) the second 1.25 ounces (35.43 grams) sold by Defendant to Mr. Ward; (3) a conservative estimate of one ounce fronted to Defendant each week for a two-month period by Mr. Ward (226.80 grams); and (4) 3 grams of methamphetamine sold to Cheree Greene."

Norton contends this determination was erroneous for two reasons. He first argues that a jury, not the district court, was required to make that factual determination. Precedent says otherwise—the district court's factual finding that Norton was responsible for a certain weight of drugs did not increase Norton's statutory minimum and maximum sentencing ranges and therefore does not violate the Sixth Amendment's jury-trial guarantee post-*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). *See United States v. Johnson*, 732 F.3d 577, 583–84 (6th Cir. 2013). Second, Norton harkens back to his sufficiency-of-the-evidence argument, claiming that Ward's testimony was uncorroborated and therefore could not support the district court's factual finding. But "[t]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (citation omitted). Norton argued below that Ward was not credible, but the district court disagreed—that determination is "generally not subject to reversal upon appellate review." *United States v. Stout*, 599 F.3d 549, 559 (6th Cir. 2010). We see nothing in this record that rises to the level of a clearly erroneous drug-quantity determination.

2.

Because the jury convicted Norton of being a felon in possession and he has at least three prior qualifying convictions, the district court enhanced Norton's sentence under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e). Norton objects on two grounds.

First, he contends the ACCA enhancement could not apply because the government did not comply with its pretrial notice obligations under the Controlled Substances Act, 21 U.S.C. § 851. That notice provision sets forth the procedures required for a conviction under that act. Relevant here, before a court may impose a prior-conviction-based enhancement, the government must file an information "stating in writing the previous convictions to be relied upon." § 851(a)(1). But the government had no duty to do so here, for that notice provision does not apply to an ACCA enhancement on a felon-in-possession conviction like Norton's. *United States v. Ball*, 771 F.3d 964, 973 (6th Cir. 2014), *vacated on other grounds*, 576 U.S. 1080 (2015) (mem.).

Second, Norton argues the district court erroneously concluded his three convictions for the sale or delivery of crack cocaine on three separate occasions in violation of Tenn. Code. Ann. § 39-17-417 qualified as "serious drug offense[s]" for purposes of his ACCA enhancement. To determine whether a particular offense qualifies as a "serious drug offense," we apply the categorical approach, "look[ing] only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps v. United States*, 570 U.S. 254, 261 (2013) (internal quotation marks omitted). Today's appeal requires using the "modified categorical approach," which applies when "a part of the state statute encompasses multiple alternative elements, not all of which are within the generic definition of the crime as set forth in the ACCA, thus making the state crime broader than the predicate offense under the ACCA." *United States v. Goldston*, 906 F.3d 390, 394 (6th Cir. 2018). In this case, "[i]f the element in the defendant's crime was part of the generic definition, then the ACCA applies. If not, and the defendant's crime rests on an element not found in the generic definition, then the crime is broader than and not covered by the ACCA." *Id.* We review de novo a district

court's conclusion that a prior conviction is a "serious drug offense" under the ACCA. *United States v. Mayes*, 928 F.3d 502, 504 (6th Cir. 2019).

We have held many times over that convictions for the sale or delivery of a controlled substance in violation of Tenn. Code Ann § 39-17-417 qualify as ACCA-predicate offenses under the modified categorical approach. *See, e.g.*, *Goldston*, 906 F.3d at 394–97; *see also United States v. McClain*, 810 F. App'x 404, 408–10 (6th Cir. 2020); *United States v. Landon*, 449 F. App'x 500, 504 (6th Cir. 2011); *James v. United States*, 217 F. App'x 431, 440 (6th Cir. 2007). Norton does not dispute this but suggests "that the principles and reasoning articulated in" *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), mandate a different result. Without any articulation as to why this is the case and especially because *Havis* addressed the Guidelines' definition of "controlled substance offense" and not the ACCA's differing "serious drug offense" term, *see McClain*, 810 F. App'x at 409–10, we find this skeletal argument abandoned, *see, e.g.*, *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016).

3.

The district court held that, because Norton committed perjury at trial, U.S.S.G. § 3C1.1's obstruction-of-justice enhancement applied. The government bore the burden of proving the applicability of this enhancement. *United States v. Iossifov*, 45 F.4th 899, 923 (6th Cir. 2022). Although we generally review legal conclusions de novo and factual findings for clear error, *see, e.g.*, *United States v. Pirosko*, 787 F.3d 358, 372 (6th Cir. 2015), we have "sent mixed messages" on how to "review the application of th[is] guideline to the facts"; sometimes we apply a de novo review of the district court's application, for others we turn to the more deferential clear-error standard, and at times we pick something in between, *United States v. Thomas*, 933 F.3d 605, 608 (6th Cir. 2019) (collecting cases). We need not resolve this tension because Norton's briefing has

abandoned this issue (and even if not, his challenge fails under the standard more favorable to him).

To protect a defendant's right to testify at trial, a district court considering an obstruction-of-justice enhancement based on a defendant's trial testimony "first . . . must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, . . . must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Roberts*, 919 F.3d 980, 990 (6th Cir. 2019) (citation omitted). The district court did that here several times over when it reviewed Norton's testimony about his distribution of methamphetamine to Greene, his sale of the firearm to Greene, and his refusal to acknowledge his own voice on the audio recording of that transaction. On appeal, Norton continues to assert that his version of the events to which he testified was not perjurious and again challenges Greene's credibility. Having not specifically addressed any alleged error in the district court's reasoning, and instead providing only a skeletal framework on this issue, we find this issue abandoned too. *See, e.g.*, *Hendrickson*, 822 F.3d at 829 n.10. And regardless, we discern no error in the district court's comprehensive analysis concerning application of this enhancement.

4.

The final enhancement to which Norton objects is the application of U.S.S.G. § 2K2.1(b)(6), which raised the base-offense level of Norton's felon-in-possession conviction because he "used or possessed [a] firearm . . . in connection with another felony offense," to wit: distributing methamphetamine to Greene. The district court applied the enhancement because the evidence at trial established that Norton sold as a package deal, a firearm and three grams of methamphetamine to Greene. The district court can apply this Guideline if doing so is supported

by a preponderance of the evidence. *See United States v. Jackson*, 877 F.3d 231, 236 (6th Cir. 2017). Other than once again attacking Greene's credibility and noting a purported lack of corroboration, Norton advances no argument that the district court's determination was not adequately supported. Considering our caselaw to the contrary, we see no reason to disturb the district court's conclusion. *See, e.g.*, *United States v. Henry*, 819 F.3d 856, 869 (6th Cir. 2016) ("[T]he joint sale of drugs and firearms has the potential to make a drug transaction easier—thus facilitating it."). And regardless, as the government notes, given Norton's armed-career-criminal designation, his drug convictions here—not the felon-in-possession conviction—drove the calculation of his Guidelines range.

Finally, Norton claims that his jury should have determined whether this enhancement applies, but again, a district court's application of a Guidelines enhancement does not violate the Sixth Amendment in these circumstances. *See, e.g.*, *Johnson*, 732 F.3d at 584.

## C.

Apart from having forfeited or abandoned several issues on appeal, Norton also briefed several issues that were not set forth in his statement of issues as required by Federal Rule of Appellate Procedure 28(a)(5). These include his contention that the government's failure to provide pretrial notice of a possible ACCA-enhanced sentence violated his right to due process and that the district court wrongly denied his motion to require DNA testing on the firearm he was convicted of possessing. These issues are also forfeited. *See, e.g.*, *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016) (issues not contained in a statement of issues are forfeited).

## III.

Remaining is defendant's pro se appeal in Case No. 22-5293. Below, he moved pro se for leave to file an interlocutory appeal to challenge certain aspects of his presentence report. The

district court denied the motion because he was represented by counsel. He now appeals, again pro se, from that order. But his briefing here, even construed liberally, fails to challenge the propriety of that order and instead raises several issues that do not "relate to th[e] particular order." *United States v. Conces*, 507 F.3d 1028, 1037 (6th Cir. 2007). Having presented no argument related to the challenged order, we find defendant's appeal in Case No. 22-5293 abandoned.

IV.

We affirm the district court's judgment.